**The court incorporates by reference in this paragraph and adopts as the findings and analysis of this court the document set forth below. This document has been entered electronically in the record of the United States Bankruptcy Court for the Northern District of Ohio.**



Dated: May 22 2018

John P. Gustafson
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | Case No. 17-31411 |
| | ) | |
| Lyneve Marie Campbell, | ) | Chapter 13 |
| | ) | |
| Debtor. | ) | |
| | ) | Judge John. P. Gustafson |

### MEMORANDUM OF DECISION AND ORDER REGARDING DEBTOR'S OBJECTION TO CLAIM NO. 8

This case came before the court for hearing on April 3, 2018 on the issue of whether Creditor Habitat for Humanity's ("Creditor") Amended Proof of Claim ("Creditor's Claim") [Claim No. 8-2; Ex. B] correctly states the amount necessary for Debtor Lyneve Marie Campbell ("Debtor") to cure the default on her mortgage ("First Mortgage") held by Creditor. Debtor filed an Objection to Claim Number 8 [Doc. #68] and Creditor filed a Response [Doc. #75]. At the hearing, the parties presented testimony, exhibits, and other evidence in support of their respective positions.

This is a core proceeding under 28 U.S.C. §157(b)(2)(A), (B), and (O) and venue is proper under 28 U.S.C. §1409(a). The court has jurisdiction over core proceedings under 28 U.S.C. §§1334 and 157(a) and Local General Order 2012-7 of the United States District Court for the Northern District of Ohio.

For the reasons that follow, Debtor's Objection will be sustained in part and Creditor's Claim will be reduced from $80,590.26 to $71,745.75 and the amount necessary for Debtor to cure the default lowered from $20,208.27 to $11,333.71.

## FACTUAL BACKGROUND

On October 29, 2014, Creditor conveyed residential real property to Debtor secured by two mortgages[1] [Ex. D; E] and two promissory notes. [Ex. A, pp. 4-7; pp. 7-10]. The First Mortgage's Promissory Note contains the following provisions relevant to the issue before the court:

1. Borrower's Promise to Pay

> 1.1  The principal sum of Seventy Thousand Dollars ($**70,000**.$^{00}$).  You will pay the principal sum in monthly installments of $**233.33** [1/300th of the Principal Amount] on the first day of each month, beginning on December 1, 2014, and continuing until November 1, 2039 [twenty-five years] (the "Maturity Date"), at which time the entire payment amount of Principal and other charges set forth below will be due and payable.  Except during an event of default, this Note shall bear interest at 0%.[2]
>
> 1.2  The costs of property insurance and property taxes, which shall be payable in monthly installments.

…

7.   Costs of Collection

> You promise to pay, in addition to the amounts owed hereunder, all costs and expenses of collection and reasonable attorney fees (including fees in bankruptcy court) we incur in enforcing our rights under this Note or the First Mortgage that secures it, whether or not we file a lawsuit.

[Ex. A, pp. 3, 6].

The First Mortgage itself contains a covenant entitled "Funds for Taxes and Insurance" that sets forth Debtor's monthly duty to provide Creditor with funds necessary for the payment of insurance and taxes via an escrow account, subject to the collection limitations set forth in the Real Estate Settlement Procedures Act of 1974 ("RESPA") [Ex. D, p. 2]. The "Funds for Taxes and Insurance" covenant states that "[t]he [Taxes and Insurance] Funds are pledged as additional

---

[1] Only the First Mortgage and its accompanying Promissory Note are relevant to the issue before the court.  Further, no party contests the validity or recording of the First Mortgage or the validity of the Promissory Note it secures.

[2] Creditor noted at the hearing that while it maintained the contractual ability to charge Debtor interest given her default on the Note, it had not opted to do so. [Claim No. 8-2, p. 2].

2

security for all sums secured by this Security Instrument." [*Id.*]. The First Mortgage also includes a covenant entitled "Borrower's Right to Reinstate" that outlines Debtor's ability to reinstate the First Mortgage subject to certain conditions, including Debtor's payment of Creditor's attorney fees related to enforcement of the Mortgage. [*Id.*, p. 7].

On July 22, 2016, Debtor made her last direct payment on the mortgage, after which a default was triggered due to Debtor's failure to pay. As a result, Creditor initiated foreclosure proceedings around October of 2016 and incurred costs of $2,314.13 and attorney fees amounting to $5,536.94.[3] [Ex. B, p. 10]. Debtor filed for Chapter 13 bankruptcy on May 5, 2017 [Doc. #1] and remains an occupant of the residential real property at issue. [*Id.*, p. 2]. In pursuit of its rights as a mortgagee, Creditor filed a Proof of Claim on September 19, 2017 that listed a claim of $76,320.00 secured by its "Mortgages and Notes." [Ex. A, p. 1]. Debtor filed an Objection to Claim Number 8 on November 16, 2017 [Doc. #36] and Creditor filed an Amended Proof of Claim ("Creditor's Claim") on February 16, 2018 listing a secured claim of $80,590.26. [Ex. B, p. 4].

Creditor's Claim states an "Amount necessary to cure any default as of the date of the petition" of $20,208.27[4] [*Id.*] and later breaks that amount down as follows: "Principal & interest due" of $6,824.98; "Prepetition fees due" of $10,536.34; "Escrow deficiency for funds advanced" of $841.55; and "Projected escrow shortage"[5] of $1,975.40. [*Id.*, p. 6]. The attachments to Creditor's Claim further explain that the "Prepetition fees due" amounting to $10,536.34 consist of: "Foreclosure filing fees/sheriff fees/courts (sic) costs" of $2,314.13; "Attorney fees for foreclosure action" of $5,536.94; "Late fees due as of 5/5/17" of $180.00; and "Closing Costs and insurance loan (balance due)" of $2,505.27.[6] [*Id.*, pp. 9-10].

---

3/ Creditor's evidence reflected minor differences as to the claimed amount of attorney fees; Exhibit C lists the total owed as $5,651.14 while the attachment to the Amended Proof of Claim lists it as $5,536.94. The court will use the figure listed in the Amended Proof of Claim.

4/ Per the court's calculation using the numbers provided on Creditor's Mortgage Proof of Claim Attachment [Ex. B. p 6], this figure should actually be $20,178.27. Where appropriate, the court will calculate using the corrected number.

5/ The court notes that "Projected escrow shortage" looks forward from the date of filing and that Creditor provided support for its figure of $1,975.40 via the itemized account summary found in Exhibit B, page 9. In other words, Creditor has established that it has already made the tax and insurance payments that make up the $1,975.40 labeled as a "Projected escrow shortage."

6/ Creditor's "Statement Pursuant to Bankruptcy Rule 3001(c)(2)(A)" [Ex. B, p. 10] combines Debtor's outstanding debt for closing costs and startup insurance fees into a single amount, $2,505.27, which shows that Debtor paid $450.00 towards the original $2,955.27 in accordance with Debtor's Exhibit 1. *Compare*, [Ex. B, p. 10] *with* [Ex. 1].

The court held a hearing on Debtor's Objection to Claim No. 8 on February 22, 2018 that was continued to April 3, 2018. [Doc. #62]. Debtor filed an Objection to the Amended Claim Number 8 on March 8, 2018. [Doc. #68].

At the April 3rd hearing, both Debtor [7] and Creditor introduced documentary and testimonial evidence in support of their respective positions. Though both parties agreed that the principal balance owed on the mortgage amounts to $67,236.97 (a figure that includes the principal arrearage of $6,824.98) and that Debtor owed $180.00 in late fees, the parties disagreed on the specific amount due as of Debtor's Chapter 13 filing. Debtor argued that: 1) Creditor's Claim should not include attorney fees incurred by Creditor during the foreclosure proceeding; 2) Creditor provided Debtor with a personal, unsecured loan that covered the closing and startup insurance costs and, thus, those amounts should not be included as a secured obligation in Creditor's Claim; and 3) Creditor's "Escrow deficiency for funds advanced" [Ex. B, p. 6] misstates the amount owed.

In light of the facts and arguments presented, the court must determine the allowed amount of Creditor's Claim and how much of that amount is attributable to Debtor's prepetition arrearage obligation on the First Mortgage. Specifically, because the parties agree as to the amount of the principal balance owed, $67,236.97, and Debtor's late fees, $180.00, the court must decide whether Creditor's Claim can further include: 1) insurance/property tax escrow costs, 2) closing costs, 3) attorney fees related to the foreclosure action, and 4) foreclosure fees and costs.

## LAW AND ANALYSIS

Where a proof of claim is executed and filed in accordance with the Federal Rules of Bankruptcy Procedure, it "constitute[s] prima facie evidence of the validity and amount of the claim." Fed. R. Bankr. P. 3001(f); *see also*, *Morton v. Morton* (*In re Morton*), 298 B.R. 301, 307 (6th Cir. BAP 2003). Thus, a debtor challenging a proof of claim bears the initial burden of overcoming the prima facie validity of the amounts stated in the claim. *Id.*; *see also*, *In re Tudor*, 342 B.R. 540, 551 (Bankr. S.D. Ohio 2005), *aff'd sub nom*, *Chase Manhattan Mtg. Corp. v. Tudor*, 2007 WL 4322187, 2007 U.S. Dist. LEXIS 90285 (S.D. Ohio Dec. 7, 2007). Once a debtor meets that initial burden, the burden then shifts to the creditor and the creditor bears the ultimate burden of persuasion insofar as the validity and extent of the claim is concerned. *See*, *Morton*, 298 B.R.

---

7/ Due to a disagreement with regards to how to address Creditor's claim, Debtor's attorney withdrew on March 13, 2018 [Doc. #72]. Thereafter, Debtor proceeded *pro se*.

at 307; *Chase Manhattan Mtg. Corp.*, 2007 WL 4322187 at *4, 2007 U.S. Dist. LEXIS 90285 at *10.

Here, Debtor argued that Creditor's Claim improperly includes: 1) attorney fees related to the foreclosure action; 2) closing costs and startup insurance fees paid via a personal loan separate from the Promissory Note secured by the First Mortgage; and 3) a property tax/insurance escrow miscalculation. Debtor also introduced exhibits that challenge the accuracy of Creditor's claim amount. Based upon the legal arguments and exhibits presented, the court finds that Debtor has met her initial burden. As discussed below, Creditor has met its ultimate burden as to the validity of some of the components of its Claim, but not others.

## I. Amended Claim No. 8

Debtor maintains that Creditor's Claim misstates the amount she owed on the First Mortgage as of the date of her Chapter 13 filing. Section 1322(b)(5) allows a Chapter 13 debtor "to cure defaults on long-term debts and maintain ongoing payments." *In re Joslin*, 544 B.R. 877, 880 (Bankr. S.D. Ohio 2016); *Chase Manhattan Mtg. Corp.*, 2007 WL 4322187 at *3, 2007 U.S. Dist. LEXIS 90285 at *7. This is accomplished by permitting a debtor's Chapter 13 plan to "provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim…." *See*, 11 U.S.C. §1322(b)(5); *Chase Manhattan Mtg. Corp. v. Tudor*, 2007 WL 4322187 at *3, 2007 U.S. Dist. LEXIS 90285 at *9.

In terms of establishing the amount necessary to cure a default or arrearage through a Chapter 13 plan, §1322(e) states that "if it is proposed in a plan to cure a default, the amount necessary to cure a default, shall be determined in accordance with the underlying agreement and applicable nonbankruptcy law." *See also*, *Chase Manhattan Mtg. Corp.*, 2007 WL 4322187 at *7, 2007 U.S. Dist. LEXIS 90285 at *28. In other words, §1322(e) sets forth the following two step process:

> First, as a threshold matter, the amount necessary to cure must be in accordance with the parties' agreement. Second, the amount sought to be included must not otherwise be forbidden by applicable, non-bankruptcy law. Section 1322(e) does not provide for the inclusion of an item in an arrearage claim that would be permitted under applicable non-bankruptcy law that was not included in the underlying agreement.

*Tudor*, 342 B.R. at 551; *see also*, *In re Thompson*, 420 B.R. 763, 766 (Bankr. S.D. Ohio 2009); *In*

5

*re Lake*, 245 B.R. 282, 285 (Bankr. N.D. Ohio 2000); *Joslin*, 544 B.R. at 880.

Accordingly, in order for the court to determine the amount of Creditor's Claim, it must look to the First Mortgage, its accompanying Promissory Note, and the laws of the state of Ohio.[8] *See*, *Tudor*, 342 B.R. at 551; *Joslin*, 544 B.R. at 881. "In construing questions of state law, a federal court must apply state law in accordance with the controlling decisions of the highest court of the state." *Brown v. Cassens Transport Co.*, 546 F.3d 347, 363 (6th Cir. 2008)(citing *Meridian Mut. Ins. Co. v. Kellman*, 197 F.3d 1178, 1181 (6th Cir. 1999)).

A review of the First Mortgage [Ex. D] and Promissory Note [Ex. A, pp. 4-7] reflects several provisions relevant to the disputed portion of Creditor's Claim.

The First Mortgage expressly provides for Debtor's monthly payment of "Funds for Taxes and Insurance" to an escrow account held by a federally insured institution, subject to RESPA's escrow collection limitations. [Ex. D, p. 2]; *see*, 12 U.S.C. §2609. The First Mortgage's accompanying Promissory Note also outlines "Borrower's Promise to Pay" as including monthly payments on the principal and the costs of property insurance and property taxes. [Ex. A, p. 4]. When viewed alongside the Mortgage Proof of Claim Attachment and loan summary attached to Creditor's Claim [Ex. B, pp. 6-10], these provisions of the First Mortgage and Promissory Note establish Creditor's right to include escrow deficiencies for taxes and insurance in its secured Claim. *See*, *In re Breit*, 490 B.R. 821, 824-25 (Bankr. N.D. Ind. 2013)("Lenders have an enforceable right to collect the past-due escrow payments by means of a pre-petition claim.") (citations omitted); *In re Harris*, 2012 WL 1410264, 2012 Bankr. LEXIS 1781 (Bankr. C.D. Ill. April 23, 2012)(holding that a Chapter 13 debtors' escrow shortage is properly included in a prepetition arrearage claim, not used as a basis for increased monthly mortgage payments).

Moreover, given Creditor's prepetition escrow deficiency payments and credible expectation of future deficiencies as of the time of Debtor's petition filing, the court finds that Creditor's including amounts for "Projected escrow shortage" in its arrearage claim does not violate RESPA's escrow collection rules. *See*, 12 U.S.C. §2609(a)(2) ("…in the event the lender determines there will be or is a deficiency he shall not be prohibited from requiring additional monthly deposits in such escrow account to avoid or eliminate such deficiency."); *Harris*, 2012 WL 1410264 at *5, 2012 Bankr. LEXIS 1781 at *16 ("The advance for taxes is properly part of

---

8/ The First Mortgage expressly provides that it will "be governed by the law of the State of Ohio." [Ex. D, p. 6].

6

the default that the Debtors are entitled to cure through the plan under section 1322(b)(5)...."). Further, Creditor's "Projected escrow shortgage" figure of $1,975.40 [Ex. B, p. 6] matches up with its summary of insurance and property tax payments made since Debtor's Chapter 13 filing. [Ex. B, p. 9]; *see*, *Breit*, 490 B.R. at 826 (finding against a creditor that had not provided documentation or explanation in support of its escrow deficiency claim). Accordingly, the court finds that Creditor has met its burden in terms of establishing the validity of the "Projected escrow shortage" component of its secured Claim.

However, as discussed at the April 3rd hearing, the parties agreed that Debtor's change in insurance premiums had impacted the accuracy of Creditor's "Projected escrow shortage" amount and that the parties would handle a portion of that debt outside the terms of Debtor's plan. To that end, Debtor turned $802.30 over to Creditor on August 16, 2018. [Doc. #86]. Accordingly, the amount of $802.30 will be disallowed and deducted from Creditor's Claim.[9]

The next issue involves the language in the Promissory Note that includes a "Costs of Collection" section. It provides for the Debtor's payment of "all costs and expenses of collection and reasonable attorney fees (including fees in bankruptcy court) we incur in enforcing our rights under this Note or the First Mortgage that secures it, whether or not we file a lawsuit." [Ex. A, p. 6]. Thus, based on the language of the parties' agreement memorialized in the First Mortgage and Promissory Note, Creditor's Claim can include the "Foreclosure filing fees/sheriff fees/courts (sic) costs" of $2,314.13 and "Attorney fees for foreclosure action" of $5,536.94.[10] [Ex. B, p. 10].

At the April 3rd hearing, the parties acknowledged that Debtor had received a loan for startup insurance and closing costs separate from the First Mortgage and Promissory Note. Additionally, Debtor introduced into evidence an account statement that further supports finding the startup costs to be a separate amount not covered by the Note or secured by the Mortgage. *See*, Ex. 1. Accordingly, because liability for closing costs and startup insurance fees "was not included in the underlying agreement" as reflected by the record before the court, Creditor's

---

9/ Per the court's analysis of Creditor's breakdown of the amounts Debtor owes [Ex. B, p. 9], the $802.30 is properly subtracted from the amount listed as "Projected escrow shortage" under Part 3 of the Mortgage Proof of Claim Attachment. [*Id.*, p. 6]. Instead of the listed amount of $1,975.40, it will be allowed in the amount of $1,173.10. Similarly, the carryover amount in Part 2 of the Mortgage Proof of Claim Attachment, "Escrow deficiency for funds advanced," will be lowered from $2,816.95 to $2,014.65.

10/ However, for the reasons discussed below, applicable non-bankruptcy law prohibits Creditor's Claim from including attorney fees incurred in the foreclosure action

7

secured claim will be reduced by $2,505.27. *See*, *Tudor*, 342 B.R. at 551. Nevertheless, the court will allow the $2,505.27 as an unsecured claim as there is no dispute that Debtor received these funds.

Debtor's Objection to the Creditor's Claim also asserts that attorney fees incurred during the course of foreclosure proceedings should be disallowed. Based upon Ohio law governing attorney fees, the court agrees. In *Wilborn v. Bank One Corp.*, 121 Ohio St.3d 546, 558, 906 N.E.2d 396, 408 (2009), the Ohio Supreme Court held that attorney fee recovery included in a residential mortgage reinstatement provision "is not contrary to Ohio statutory or decisional law or against Ohio public policy." However, the *Wilborn* court held that contractual reinstatement provisions are different from attempts to require the payment of attorney fees if principal and interest are not paid, which "are contrary to public policy and void." 121 Ohio St.3d at 549, 906 N.E.2d at 402. Unlike contractual reinstatement of a mortgage, a "…foreclosure proceeding is the enforcement of a debt obligation, and in that situation, the rule against paying another party's attorney fees as articulated in the *Leavans* and *Miller* cases well applies." 121 Ohio St.3d at 550, 906 N.E.2d at 402 (citing *Leavans v. Ohio Natl. Bank*, 50 Ohio St. 591, 34 N.E. 1089 (1893); *Miller v. Kyle*, 85 Ohio St. 186, 97 N.E. 372 (1911)); *see also*, *Joslin*, 544 B.R. at 882; *Tudor*, 342 B.R. at 566 (decided prior to *Wilborn*).

In *Joslin*, an Ohio bankruptcy court addressed the issue of a creditor claiming a right to prepetition attorney fees as part of its arrearage claim on the basis that its mortgage contract with the debtor provided for attorney fee recovery in connection with contractual reinstatement. 544 B.R. at 880-82. In finding against the creditor, the *Joslin* court explained:

> *Wilborn* makes clear that a debtor may select from a number of mechanisms and processes intended as legal protection for the debtor when faced with foreclosure. The Debtor in this case elected to pursue his bankruptcy right to cure and maintain his mortgage under § 1322(b)(5) and not under the Restatement (sic) Provision in his Mortgage. Accordingly, the Restatement (sic) Provision does not provide a basis for Sharefax's claim for attorney fees as part of its prepetition arrearage claim because it is not operative in this case.

*Id.* at 882 (quotations and citations omitted).

Though it dealt with a slightly different set of facts, the court finds *Joslin*'s analysis of the *Wilborn* holding to be applicable here. The First Mortgage and Promissory Note mention attorney fee recovery twice, once as a component of "Borrower's Right to Reinstate" [Ex. D, p. 7] and once as a part of the "Costs of Collection." [Ex. A, p. 6]. Under Ohio law, neither provision is sufficient

8

to permit Creditor's inclusion of attorney fees from the foreclosure action in its Claim. First, Debtor chose Chapter 13 bankruptcy as a method for attempting to cure her outstanding arrearage, not contractual reinstatement. Therefore, the "Borrower's Right to Reinstate" is not operative in this case. *See*, *Joslin*, 544 B.R. at 881-882; *In re Tudor*, 342 B.R. at 549-50 ("…the Reinstatement Provision was not triggered here because the Debtor did not actually invoke his contractual right of mortgage reinstatement. Instead, he chose - by filing a Chapter 13 case - to utilize the statutory cure mechanism provided by §1322(b)(5) of the Code.").

Second, because the attorney fees relate to the Creditor enforcing its statutory legal rights in a foreclosure proceeding, and not the contractual right of reinstatement, the "Costs of Collection" provision's inclusion of attorney fees runs afoul of the Ohio rule against assessment of attorney fees in connection with enforcement of a debt obligation. *See*, *Wilborn*, 121 Ohio St.3d at 548-550, 906 N.E.2d at 400-401.[11]

In *Wilborn*, the Ohio Supreme Court stated that "contracts for the payment of attorney fees upon the default of a debt obligation are void and unenforceable." 121 Ohio St.3d at 549, 906 N.E.2d at 401. In allowing creditors to require the payment of attorney fees as part of contractual reinstatement, *Wilborn* made a clear distinction between legal rights and contractual rights. 121 Ohio St.3d at 550-551, 906 N.E.2d at 402. As *Joslin* held, *Wilborn*'s denial of attorney fees incurred in a foreclosure action where the defaulting borrower exercised the legal right to redeem, rather than the contractual right to reinstate, prevents allowance of attorney fees incurred in a foreclosure action where the defaulting borrower has elected to utilize her statutory rights under §1322(b)(5). *Joslin*, 544 B.R. at 882 ("Section 1322(b)(5), like state law redemption, is a right that a chapter 13 bankruptcy debtor is *entitled to by law*, separate and apart from any contractual right of reinstatement.")(emphasis in original). Accordingly, the court will disallow the $5,536.94 in "Attorney fees for foreclosure action" and deduct it from Creditor's Claim because applicable non-bankruptcy law forbids allowance of the fees where a statutory right to terminate the default is being exercised. *See*, 11 U.S.C. §1322(e); *Tudor*, 342 B.R. at 551.

---

11/ *See also*, *Leavans*, 50 Ohio St. 591, 34 N.E. 1089, syllabus ("A stipulation in a mortgage to the effect that, in case an action should be brought to foreclose it, a reasonable attorney fee, to be fixed by the court, for the services of the plaintiff's attorney in the foreclosure action, should be included in the decree, and paid out of the proceeds arising from the sale of mortgaged property, is against public policy and void."); *Miller*, 85 Ohio St. 186, 97 N.E. 372, syllabus ("It is settled law of this state that stipulations incorporated in promissory notes for the payment of attorney fees, if the principal and interest be not paid at maturity, are contrary to public policy and void.").

Ohio's prohibition against imposing the expense of attorney fees is based, in part, on adherence to the "American rule" that a prevailing party may not – generally – recover attorney fees as part of the costs of litigation. *Wilborn*, 121 Ohio St.3d at 548, 906 N.E.2d at 400. However, other costs incurred by Creditor during the course of its attempted foreclosure on Debtor's residence are treated differently.  As noted by the *Tudor* court in differentiating between title costs and attorney fees, "Ohio law permits a mortgagee, as a general rule, to recover the costs of an action to foreclose." 342 B.R. at 570; *see also*, *In re Roach*, 285 B.R. 676, 679 n. 3 (Bankr. S.D. Ohio 2002).  The *Tudor* court went on to explain, "[i]n distinguishing between attorney fees and costs, courts have looked to the nature of the service performed rather than the identity of the service provider." 342 B.R. at 571; *see also*, *In re Staud*, 2005 WL 4041160 at *1, 2005 Bankr. LEXIS 2898 at *2 (Bankr. S.D. Ohio May 25, 2005)(holding that, although attorney fee recovery provisions are prohibited in mortgage contracts under Ohio law, "it has generally been understood that expenses, such as those associated with foreclosure actions, i.e., title report, court costs, and sheriff's fees, are proper."); *In re Campbell*, 138 B.R. 184, 187 (Bankr. S.D. Ohio 1991).

This distinction between attorney fees and other costs is also found in the *Wilborn* decision, where the Ohio Supreme Court stated: "Once she paid all of the outstanding principal, interest, *and court costs* in the foreclosure action, the debt to her lender was satisfied, and the lender was required to dismiss the foreclosure action not because of any reciprocal contractual obligation but because no debt remained to be enforced.  Nevertheless, Wilborn's lender required her to pay its attorney fees incurred in connection with the foreclosure action as a condition of dismissal." 121 Ohio St.3d at 558, 609 N.E.2d at 408 (emphasis added).  Thus, what was required to be returned to Wilborn was the attorney fees, which had been improperly charged, not the court costs which were properly required to be paid as part of the "entire debt". *Id*.

Further, the court finds that Creditor's "Foreclosure filing fees/sheriff fees/courts (sic) costs" in the amount of $2,314.13 are distinguishable from attorney fees because those expenses are "associated with foreclosure actions" and not intertwined with the performance of legal work. *See*, *Staud*, 2005 WL 4041160 at *1, 2005 Bankr. LEXIS 2898 at *2.  Finally, the court finds that payment of Creditor's foreclosure costs are contractually required by the language in the Promissory Note's "Costs of Collection" provision. [Ex. A, p. 6].

For all of the reasons stated above, the court will allow the $2,314.13 in "Foreclosure filing fees/sheriff fees/courts (sic) costs" as a component of Creditor's secured claim.

**II. Conclusion**

To summarize, the court will disallow the following portions of Creditor's Claim: 1) the $802.30 that Debtor paid to Creditor in relation to the insurance/escrow change; 2) closing costs and startup insurance fees in the amount of $2,505.27 as a secured claim, allowing the amount as an unsecured claim; and 3) $5,536.94 in attorney fees incurred by Creditor during its foreclosure action. Further, the court finds that each of these amounts are not required to be paid as part of the "cure" of the mortgage default pursuant to 11 U.S.C. §1322(b)(5).

Accordingly, based upon the foregoing and for good cause shown,

**IT IS ORDERED** that Debtor Lyneve Marie Campbell's Objection To Claim No. 8 [Doc. #68] be sustained to the extent that the secured claim of Creditor Habitat for Humanity, as set forth in Amended Claim No. 8 [Claim No. 8-2; Ex. B] be, and is hereby, reduced from $80,590.26 to $71,745.75, with an amount necessary to cure default lowered from $20,208.27 to $11,333.71.

**IT IS FURTHER ORDERED** that Creditor Habitat for Humanity be allowed an unsecured claim in the amount of $2,505.27.